UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| ZACHERY SHEPHERD, | ) |
| Plaintiff, | ) Civil No. 15-54-ART |
| v. | ) |
| FLOYD COUNTY, KENTUCKY, et al., | ) **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Zachery Shepherd, an inmate at the Floyd County Detention Center, alleges that he was "brutally" and "savagely" beaten by another inmate during his incarceration. R. 1-1 at 2 (state court complaint). He claims that prison officials failed to protect him from this attack and failed to give him adequate medical attention afterwards. He also claims that prison officials were inadequately trained. Shepherd filed suit in state court, and the defendants removed to federal court. R. 1 (notice of removal).

The Court dismissed various claims upon the plaintiff's motion and others due to governmental immunity. R. 10; R. 23. In addition, the Court dismissed claims against the individual deputy jailers for lack of service. R. 23. Only one claim remains—a 42 U.S.C. § 1983 claim alleging Eighth Amendment violations against Floyd County, Floyd County Fiscal Court, and County Jailer Cheyenne McKinney in his individual capacity. *Id.* The defendants now move for summary judgment on this claim, arguing that no genuine dispute of material fact exists. R. 30.

## BACKGROUND

Zachery Shepherd entered the Floyd County Detention Center in June of 2014. R. 1-1 at 2. As part of the normal intake process, jail staff asked Shepherd if there was "any reason [he] should be separated from another inmate while [at the jail]." R. 24 at 16 (Zachery Shepherd Deposition). According to Rankin, Shepherd named only two people, neither of whom was his attacker. *Id.*; R. 28 at 25–26 (Richard Rankin deposition). Shepherd claims he also named Jason Chaffins, his attacker. R. 24 at 16, 19–20; R. 32 at 7. After his initial intake, a deputy jailer transferred Shepherd to a cell where many other inmates were being held. It is jail custom for deputies to show a new inmate a list of individuals in the cell to which he is being transferred so that he can again identify inmates that pose a potential threat. R. 25 at 5–6; R. 24 at 23. But Shepherd alleges that he was never shown such a list. *Id.* Shepherd states that, after he arrived at his cell, he went inside, paid no attention to the other inhabitants, and went to sleep. *Id.*

Chaffins was in that cell. Around 3:45 a.m., Chaffins allegedly attacked Shepherd. *Id.* at 25; *see also* R. 30-1 at 8. The deputy jailer who monitors video feed from inside the jail, Bethel Compton, heard Shepherd kicking on the cell door. R. 26 at 5. Compton called booking, and Lieutenant Richard Rankin answered the phone. *Id.* Rankin and Nathan Hall, another deputy jailer, went to Shepherd's cell.

According to Rankin, Shepherd had blood on his shirt and hands from a bloody nose. R. 28 at 6. Rankin thought Shepherd might have broken his nose. *Id.* at 8. Rankin and Hall state that Shepherd took a shower, and Rankin observed that Shepherd's nose had stopped bleeding by the time he got out of the shower. R. 28 at 30. Rankin examined Shepherd after

2

he got out of the shower. *Id.* at 6.  Rankin found no bruising on Shepherd's body, nor did he find any injuries suggesting that Shepherd needed emergency medical attention. *Id.* at 7. Rankin stated that he typically asked inmates if they felt like they needed to go to the hospital post-altercation, but could not remember doing so in this particular case. *Id.* at 8. Shepherd did not say anything about needing to go to a hospital, but Rankin remembered Shepherd being concerned about his commissary. *Id.* at 9.

Shepherd, on the other hand, stated that he was never given a shower after the fight; he said that the deputies just placed him in the shower room and he washed up with a washcloth. R. 24 at 26–27. Shepherd said that he had to stop the bleeding himself. *Id.* at 32. Shepherd further stated that he told "one of the guards" that "there's something very, very wrong with me." *Id.* at 23.

The deputy jailers asked the jail's nurse, Brandi Morgan, to examine Shepherd when she started her shift that day (around noon). R. 29 at 4–5. Shepherd told Morgan that he had lost consciousness during the attack, that he had been in and out of consciousness since, and that he found it painful to breathe. *Id.* at 13. He also told Morgan that it hurt when he breathed. *Id.*; R. 32 at 15. Morgan also noticed a bruise behind Shepherd's right ear. R. 29 at 12. Based on this information, Morgan sent Shepherd to the hospital for further evaluation. *Id.* at 12. At the hospital, doctors performed an exploratory endoscopy and eventually had to perform surgery to repair Shepherd's bowel. R. 1-1 at 6.

Shepherd argues that the defendants—Floyd County, Floyd County Fiscal Court, and head County Jailer Cheyenne McKinney[1]—should be liable for failing to protect him from

---

[1] The individual deputy jailers, including Rankin and Hall, were dismissed from the case due to lack of service. R. 23.

the attack, for failing to give him adequate medical treatment, and for failing to train jail staff. The defendants now move for summary judgment, claiming that Shepherd has failed to show there is a genuine issue of material fact for trial.

## DISCUSSION

Summary judgment is appropriate if the record, when "viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing Fed. R. Civ. P. 56(c)). The moving party must identify the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that party has made this showing, the non-moving party bears the burden of "showing that there is a genuine issue for trial." *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986) (citing Fed. R. Civ. P. 56(e)). The non-moving party cannot "rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting Fed. R. Civ. P. 56(e)). Thus, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### I. Floyd County and Floyd County Fiscal Court

To hold Floyd County and Floyd County Fiscal Court liable for deprivation of Shepherd's constitutional rights, Shepherd must show that a governmental policy or custom deprived him of his rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 385–87 (1989); *Ford v.*

*Cty. of Grand Traverse*, 535 F.3d 483, 497 (6th Cir. 2008) (stating that a plaintiff must put forth evidence of a "direct causal link" between the policy and the deprivation). The policy must show "deliberate indifference" to a prisoner's individual rights. *Id.* at 498. This deliberate indifference standard is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action" as it relates to inmate health or safety. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[R]easonable policies . . . negligently administer[ed]" do not give rise to § 1983 liability. *Gray v. City of Detroit*, 399 F.3d 612, 618 n.1 (6th Cir. 2005).

    A.    *Failure to Protect Shepherd from Attack*

Shepherd concedes that the Floyd County Detention Center had policies in place to prevent attacks on inmates.[2] Shepherd relies upon statements by Rankin for his version of the jail's transfer policy. *See* R. 32. According to Rankin, inmates entering the prison are asked to name anyone who would pose a potential threat to them. R. 28 at 34; R. 28-1 at 5. The deputy jailer doing the intake notes the names on the intake sheet. R. 28 at 34; R. 28-1 at 5. Then, when inmates are transferred to a specific cell, the inmates are shown a printed list of the people in each cell and asked to identify names of potentially threatening inmates. R. 28 at 26; R. 33 at 4. Finally, the inmate has a chance to walk through each cell and identify anyone who is a threat before being permanently placed in the cell. R. 28 at 32.

---

[2] This concession distinguishes Shepherd's case from others where courts have denied a county's motion for summary judgment. For example, in *Blackmore v. Kalamazoo County*, the Sixth Circuit reversed a district court's grant of summary judgment because "the record present[ed] an issue of fact regarding the total lack of any County policies, practices, and adequate training" for the plaintiff's type of claim. 390 F.3d 890, 900 (6th Cir. 2004) (emphasis added). Similarly, in *Taylor v. Michigan Department of Corrections*, the court found that the prison warden's testimony "present[ed] a jury question about the existence and adequacy . . . of reasonable transfer procedures." 69 F.3d 76, 80 (6th Cir. 1995). Here, the record clearly shows—and Shepherd concedes—that Floyd County Detention Center had policies and/or customs for transferring inmates.

Shepherd states that he did not scan the cell himself, but does not dispute that he had the opportunity to do so.[3]

Shepherd alleges: (1) that the deputy jailers should have written down Jason Chaffins's name during his initial intake and (2) that he was not shown the printed list of inmates in his cell. But these two allegations, even if supported by evidence, are insufficient to meet the "stringent standard of deliberate indifference required to establish municipal liability." *Ford*, 535 F.3d at 498. First, Shepherd provides no evidence that the jailers had a policy or custom of (1) not writing down named inmates during intake or (2) not showing new inmates the names of people in their respective cells before transferring them. *See Miller v. Calhoun Cty.*, 408 F.3d 803, 815 (6th Cir. 2005) (explaining that a showing of deliberate indifference "typically requires proof that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures"); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) (holding that plaintiff's claim failed because there was no evidence that the city had either "a custom of denying medical treatment" to inmates or "notice of a clear and persistent pattern of such treatment"). And even if the policy was not followed in Shepherd's case, that fact is insufficient to hold the county and county fiscal court liable. As stated above, "reasonable policies . . . negligently administer[ed]" do not give rise to § 1983 liability. *Gray*, 399 F.3d at 618 n.1. As a result, Shepherd "fail[s] to make the threshold showing of a clear and persistent pattern of mistreatment of" prisoners. *Miller*, 408 F.3d at 815.

---

[3] Shepherd also alleges that the jail did not monitor its cells adequately. Specifically, he claims that the video feed going to the control tower did not cover the corner of cell #67 where Chaffin attacked him. But Shepherd does not argue that a video feed of the entire cell could have prevented the attack. Nor does he allege that the gap in the video feed allowed the attack to go on for too long. R. 28 at 5, 12.

6

Second, Shepherd adduces no "independent evidence tending to show" that the jail's transfer policies were "unreasonable." *See Miller*, 408 F.3d at 815–16. And "[t]he fact that alternative procedures might have better addressed [a prisoner's] particular needs does not show that the [County was] deliberately indifferent to his . . . needs." *Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004) (internal quotation marks omitted).

In sum, Shepherd has failed to demonstrate that there exists a genuine issue of material fact as to whether Floyd County or Floyd County Fiscal Court's policies facilitated the violation of his constitutional rights. *Ford v. Cty. of Oakland*, 35 F. App'x 393, 396–97 (6th Cir. 2002). Therefore, Shepherd's failure-to-protect claim against them fails.

B.   *Failure to Provide Adequate Medical Treatment*

Shepherd next claims that the jail's policies about medical treatment for inmates "facilitated the violation" of his constitutional right to adequate medical treatment. The jail's written policy about medical treatment for inmates states that "[e]mergency medical services are available 24 hours a day to inmates . . . commensurate with the level of such care available to the community." R. 25-1 at 1. Southern Health Partners provides a licensed nurse to the jail under a contract. R. 29 at 4. The nurse, Brandi Morgan, has an eight-hour shift on weekdays and is on-call at all other times. *Id.* at 18, 19. The policy also states that "no officer or other employee" shall ever summarily or arbitrarily deny an inmate's request for medical services. R. 25-1 at 6.

The jail's policy helps jail staff identify a medical emergency. According to the policy, a medical emergency is evidenced by any one (or more) of, *inter alia*: excessive bleeding, unconsciousness, severe burns, a suicide attempt. *See id.* at 1. The deputy jailers

7

are in charge of determining whether any conditions on the list are met. R. 25 at 10; R. 29 at 19; R. 28 at 15–16. If any of those conditions are present, the medical emergency plan goes into effect. R. 25-1 at 1–2, 4. That means a deputy jailer must immediately administer first aid, call the facility nurse or physician, and follow his or her instructions. *Id.* Morgan, the facility nurse, stated that she trained jail employees about dealing with medical emergencies. R. 33-1 at 1.

Shepherd alleges two problems with the jail's policies about medical care. First, he claims that the policy had outdated information. He points to page four of the policy, which names three physicians to call in case of a medical emergency. R. 25-1 at 4. Those three physicians are now deceased. R. 32 at 9. Shepherd argues that this is evidence that the jail's policy was "deliberately indifferent" to his right to adequate medical treatment. But his argument fails for two reasons. First, Shepherd does not show that the listing of the three deceased doctors was the "moving force, or direct causal link, behind [his] constitutional injury." *Garretson*, 407 F.3d at 796. In other words, Shepherd does not allege that the outdated doctor list actually "facilitated the violation" of his constitutional rights. *Ford*, 35 F. App'x at 396–97. Indeed, there is simply no evidence that Shepherd suffered a delay in receiving medical treatment because the deputy jailers attempted to call the dead doctors. To the contrary, the evidence shows that the deputy jailers knew to call Morgan in case of a medical emergency. *See* R. 33-1 at 1. And Morgan stated that her contact information was posted in the booking area and on the door of the medical unit. *Id.* Rankin also stated that he knew to call Morgan—not the three doctors—if inmates needed medical attention. R. 28 at 14–15. Thus, this "problem" with the jail's medical policy cannot be the basis for § 1983 liability in Shepherd's case.

8

Second, Shepherd seems to argue that deputy jailers should not be in charge of determining what constitutes a medical emergency. Of course, medical professionals like doctors and nurses are likely better at making medical judgments than deputy jailers. But that fact alone is insufficient to create an issue of material fact as to whether the county's policies were deliberately indifferent to Shepherd's right to adequate medical treatment. As stated above, "the fact that alternative procedures might have better addressed [a prisoner's] particular needs does not show that the [County was] deliberately indifferent to his medical needs." *Graham*, 358 F.3d at 384. Moreover, the Sixth Circuit has upheld grants of summary judgment for counties with similar policies. *See Miller*, 408 F.3d at 815–16 (holding that the county was not deliberately indifferent where it had a policy requiring officers "to contact the on-call doctor in the event of a medical emergency"); *see also Tapp v. Banks*, 1 F. App'x 344, 352 (6th Cir. 2001) (affirming the district court's grant of summary judgment in favor of Perry County Jail where jail staff were in charge of identifying whether injuries were sufficiently serious to necessitate further medical attention). The jail's medical treatment policies, among others, frequently passed the state's annual evaluations. R. 30-6. Shepherd again fails to adduce "independent evidence"—beyond his own opinion—tending to show that such a policy was unreasonable. *See Miller*, 408 F.3d at 815–16.

Moreover, as with Shepherd's failure to protect claim, Shepherd fails even to allege that the county has "a custom of denying medical treatment" to inmates or "notice of a clear and persistent pattern of such treatment." *Garretson*, 407 F.3d at 796 (holding that a lack of evidence of "a custom of denying medical treatment" to inmates or "notice of a clear and persistent pattern of such [inadequate medical] treatment" was fatal to plaintiff's claim); *see*

9

*also Miller*, 408 F.3d at 815 (explaining that a showing of deliberate indifference "typically requires proof that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures").  In sum, Shepherd fails to present any evidence to "create a genuine issue of material fact" as to each of these elements.  *Ford*, 35 F. App'x at 396–97.  Thus, the county and county fiscal court cannot be held liable for the alleged failure to provide Shepherd adequate medical attention.

C. **Failure to Train**

Finally, Shepherd alleges that Floyd County and the Floyd County Fiscal Court failed to train jailer McKinney and other deputy jailers adequately.  R. 1-1 at 9.  A county's "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  Again, to be actionable under § 1983, a failure to train must indicate deliberate indifference to the rights of prisoners. *Miller*, 408 F.3d at 816.  In addition, plaintiffs ordinarily need to show "a pattern of similar constitutional violations by untrained employees."  *Connick*, 563 U.S. at 62.  Mere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to prove liability.  *Miller*, 408 F.3d at 816.

Shepherd alleges that the deputy jailers were not trained to identify medical emergencies.  In support of that allegation, he points to a statement by Rankin, who stated in his deposition that he was not trained "in the steps necessary to identify medical emergencies."  R. 28 at 17.  But Rankin's other statements suggest that his actions were consistent with the jail's policy.  For example, he looked for excessive bleeding and bruising, and he knew that inmates who ask for medical attention should receive it.  *Id.*  In addition, Rankin stated he was trained in first aid and CPR.  *Id.*  And even assuming Rankin was not

10

trained in the steps necessary to identify medical emergencies, Shepherd has at best shown one untrained officer, not a pattern of constitutional violations by untrained officers. *Connick*, 563 U.S. at 62. Other officers were given medical training. McKinney and Hall indicated that they knew about the jail's plan for medical emergencies. R. 25 at 6; R. 27 at 10. And Nurse Morgan testified that she trained the jailers about the Emergency Medical Plan and that all staff received first aid and CPR training within their first year of employment. R. 33-1. The jail's policy, as discussed above, included a list of specific and easily identifiable conditions, any one of which would indicate a medical emergency. R. 25-1 at 1. Finally, evidence also shows that McKinney and all the deputy jailers deposed in this case attended the Kentucky Department of Corrections mandatory annual jailer training. R. 30-3 (sign-in sheet). So Shepherd's failure-to-train claim with respect to medical emergencies fails.

Similarly, Shepherd puts forth no evidence—beyond his own experience—suggesting that this training was inadequate with respect to transferring inmates or protecting them from attack. Like the plaintiff in *Miller*, Shepherd "offers no evidence beyond the facts of this case tending to show that the County's training . . . policies were inadequate. There is no history of similar incidents at the Correctional Facility, nothing to show that the County was on notice, and nothing to show that the County's failure to take [a]meliorative action was deliberate." *Miller*, 408 F.3d at 816. Nor does he show any "evidence of a pattern of similar alleged constitutional violations by untrained employees." *Connick*, 563 U.S. at 61. Thus, this failure-to-train claim fails as well.

## II. Cheyenne McKinney

### A. Failure to Protect

Shepherd claims that Cheyenne McKinney, the Floyd County Jailer at the time of Shepherd's attack, should be individually liable for failing to protect him. McKinney was not personally involved in transferring Shepherd to his cell. Thus, McKinney can only be liable in his supervisory capacity. "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006) (emphasis added) (internal quotation marks omitted). "At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (internal quotation marks omitted).

Here, there is simply no evidence in the record that McKinney "encouraged the specific incident of misconduct" or "directly participated in it." Courts have held supervisors liable for failure to supervise in the face of "actual knowledge of a breakdown of the proper workings of the department." *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992). In *Hill*, the jail supervisor himself testified that he knew that the correctional facility had a "pervasive pattern of failing to provide proper medication for inmates." *Id.* at 1212. But there is no evidence that McKinney knew of any alleged breakdown of the proper workings of the department. If the transferring deputy did not show Shepherd the list of inmates in his cell, then McKinney did not know about it. R. 25 at 5–6 ; *see also id.* at 14 (McKinney stating that he did not know that Shepherd had told anyone that Chaffins was a threat).

12

Instead, McKinney stated at his deposition that deputy jailers usually showed inmates "a computer printout" of inmates before moving them to a specific cell. *Id.* at 5. Thus, McKinney cannot be held liable for his deputies' alleged misconduct in the absence of evidence that he even knew about it.

### B. Failure to Provide Adequate Medical Treatment

Shepherd also alleges that McKinney failed to provide him with adequate medical treatment. As noted above, McKinney was not personally involved in responding to the attack or in providing Shepherd medical attention. R. 32 at 8 (plaintiff conceding such). Thus, he can only be liable in his supervisory capacity.

Here, Shepherd alleges that Rankin and Hall, the jailers who responded to the attack, failed to give him adequate medical treatment.[4] Assuming that Rankin and Hall committed the "offending" conduct, Shepherd fails to allege facts showing that McKinney, their supervisor, even knew about that conduct. McKinney himself states that he had no knowledge of his deputies' alleged violation of medical emergency policies in Shepherd's case. R. 25 at 19. Shepherd's conclusory allegations that McKinney knew about his injuries, R. 32 at 32, are insufficient to establish McKinney's subjective knowledge. *See Stevens v. Gooch*, 615 F. App'x 355, 361 (6th Cir. 2015); *see also Scozzari v. Miedzianowski*, 597 F. App'x 845, 849 (6th Cir. 2015) (holding that, to establish subjective component of deliberate indifference, plaintiff must allege facts showing that the official "subjectively perceived facts from which to infer substantial risk to the plaintiff"). Therefore, Shepherd fails to produce "significant probative evidence . . . on which a reasonable jury could return a verdict" in his

---

[4] The Court declines to decide whether Rankin's and Hall's conduct demonstrated deliberate indifference to Shepherd's rights. They were dismissed from the case due to lack of service. R. 23.

favor as to this claim. *Chappell v. City of Cleveland*, 585 F.3d 901, 913 (6th Cir. 2009) (citations omitted).

### C. Failure to Train

Shepherd alleges that McKinney failed to adequately train his deputy jailers. R. 1-1 at 6–7. Again, as above, the plaintiff must assert facts "demonstrat[ing] that [McKinney] took deliberate action or was otherwise involved in [his deputies'] illegal acts." *Essex v. Cty. of Livingston*, 518 F. App'x 351, 357 (6th Cir. 2013). A mere allegation that a supervisor "inadequately trained . . . deputies" is "insufficient to support a supervisory-liability claim." *Id.*; *see also Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (holding that a supervisors' failure to review subordinates' work is insufficient to hold supervisors liable under § 1983). Here, Shepherd merely alleges that McKinney inadequately trained his deputies. And he presents no evidence of that beyond his own experience. Thus, under *Essex*, Shepherd cannot sustain a supervisory liability claim against McKinney.

## CONCLUSION

Shepherd fails to meet the high standard for county liability, county fiscal court liability, and supervisory official liability under § 1983. Accordingly, it is **ORDERED** that:

(1) The defendants' motion for summary judgment, R. 30, is **GRANTED**.

(2) Shepherd's complaint, R. 1, is **DISMISSED WITH PREJUDICE** with respect to all issues raised in this proceeding.

(3) This action is **STRICKEN** from the Court's active docket.

(4) A separate judgment shall issue with this Order.

This the 1st day of June, 2016.

Signed By:
*Amul R. Thapar* AT
United States District Judge